Smith, J.
The following facts were found by the court of common pleas: That Goss, Richardson & Welsh were contractors with the defendant company, to build certain portions of its road. That Shirely, O’Brien and others were sub-contractors under them, or one of them, and each of the contractors and sub-contractors perfected a lien on the railroad under the act of April 6, 1883, under contracts entered into after the execution of all the mortgages and the issue of all the bonds secured by them. That each sub-contractor furnished material to his contractor, and each contractor furnished materials to the company rinder contracts entered into after the execution of all the mortgages, and the issue of all the said bonds, which materials were used in the construction of the railroad.
That each of the other persons who excepted, under the act of April 6, 1883, perfected their lien for work and labor done and materials and boarding furnished after that date, on contracts also executed after that date — except O’Brien (and others named in the finding) whose contracts were made before the passage of said law; but all of their claims accrued long after the execution of the mortgages on the railroad and the bonds to secure which they were given, and to pay which the railroad was sold.
On this state of fact the common pleas court held that the contractors had no lien, but that the sub-contractors who had perfected liens, had liens superior to those of the mortgages. The contractors now seek to reverse this holding as to them, and the trustees of the first mortgage ask the reversal of the judgment rendered in favor of the sub-contractors —the proceeds of the sale of the road not being nearly sufficient to pay the amount due on their mortgage claim.
We understand it to be practically conceded by all parties, that prior to the passage of the act of April 0,1883, amending sections 3207-8-9-10 and 11 (Ohio Laws, vol. 80, p 99; *364 Williams’Stat. vol.8, 158) that there was no law which gave -either to contractors "or sub-contractors the right to take a lien upon the railroad itself. The sections named as they .stood in the revision of 1880, provided for the liability of .the railroad company to those who performed labor or .furnished material under a contract, for orto any contractor -or sub-contractor on the work contracted for by the company, and points out how that liability is to be raised and enforced, but did not give a right to a lien on the road itself. .The .amendment of 1883 to section 3207, provides also for the ■liability of a railroad company constructing a road, to those who perform labor or furnish any materials, stipulated for in the original contract with the company, under a contract express or implied with the original, or any sub-contractor, and directs that the company shall provide in its contract for the construction of the road, the mode in which the payments therefor shall be made, viz: First. To those performing labor, or furnishing materials or boarding on the order of any contractor or sub-contractor, to persons employed by them or in the construction of such railroad, without preference. Second. To any balance due a sub-contractor ,on his contract; and Third. To the original contractor any balance due to him.
Section 3208, as amended also April 6, 1883, provides that “a person who performs labor or furnishes materials for, or in the construction of any railroad, * * * * and a person who furnishes boarding on the order of any contractor or subcontractor to persons employed by them, or either of them, in furnishing materials or performing labor for or in the construction of such railroad * * * in addition "to his rights under the preceding section, shall have a lien for the payment of the same upon such railroad, and such lien shall have and maintain precedence over any lien taken or to be taken, and shall subsist for one year from the date of filing the attested account, hereafter provided for.” And this sec *365 tion and those succeeding, point out the way in which this lien is to be perfected and enforced..
By the terms of those two sections, it would seem that no provision was expressly made for a lien on the railroad by the original contractor, but the right is clearly given to all material men and those who perform labor or furnish boarding, which enters into the construction of the road, when furnished under an arrangement with the contractor or a sub-contractor, to acquire such a lien, and that the provisions are broad enough to include a sub-contractor himself as one entitled to such lien. The amendatory law of April 10, 1884. O. L. vol. 81, 120, gives the same right to a principal contractor. So far, then, as the railroad company itself is concerned, it would seem that there can be no question, but that their lien is valid.
But how do they stand as to the mortgages which were upon the road long before it entered into the arrangement with the contractor for the construction of that part of the road, and of course before any of the work was done thereon or the materials or boarding furnished therefor?
Two questions arise to this. First. Was it the intention of the legislature, in the enactment of this section, to provide that liens which should be taken under it, should have priority over mortgages or other liens on the road, which existed at the time, and before the passage of the act? And second, if so, is the enactment in that respect a constitutional one?
We think it clear that this provision of the statute must have a prospective operation only. The law is well settled as to the construction which should be given to such statutes. As held in the case of Keeley v. Kelso, 5 Ohio St. 198, “statutes affecting substantial interests and rights of property, have a prospective operation only, unless the contrary is clearly expressed.” And to the same effect is 37 Ohio St., 72; Cooley’s Constitutional Limitations 370.
*366 This case comes precisely within these holdings. The trustees of these mortgages held valid liens on this railroad at the time of the passage of this act. If it operates retrospectively, it might sweep away by an after-acquired right every security they hold. It can not be conceived that it was the intention of the legislature that this should be done. It does not say it shall so operate, and it can have complete effect by holding that in the future such liens have priority, which the legislature had full right to enact.
But if the language of the statute is so broad, that it should be held to mean that the legislature has provided that a lien taken after the passage of the act should have priority over a mortgage or other lien, taken before its passage, it would be clearly unconstitutional in this respect. It is hardly necessary to cite authority as to this, but we quote a single passage from the decision of Judge Brinkerhoff in the case of Rairden v. Holden, Adm’r, 15 Ohio St., 207-210: “The words ‘retrospective’ and ‘retroactive,’ applied to law, seem to be synonymous. * '* * Mr. Justice Story thus defines a retroactive law: ‘Upon principle, every statute which takes away or imjairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disabiliy in respect to transactions or considerations already past, must be deemed retrospective.” And our constitution, Section 28, Art. 2, provides expressly “that the general assembly shall have no power to pas's retroactive laws, or laws impairing the obligation of contracts,” which this law would do, if it is to have the construction claimed. We are of the opinion then, that any judgment of the court of common pleas, giving priority to the liens of any of these parties over the mortgages to the trustees, was erroneous, and must be reversed, and that the judgment as to the lien of the contractor should be affirmed. But in view of the fact that the *367 purchase-money remaining is not nearly sufficient to pay the claim of the trustee for the bondholders, the controversy between the contractors and sub-contractors is of no moment.
C. B. Matthews, for Trustee of the Bondholders.

Judge Bannon et al., Contra.